**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PAUL NEWMAN, | : | No. 1:16-CV-01993 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| CLOUSE TRUCKING, INC., | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**APRIL 5, 2018**

Plaintiff Paul Newman ("Plaintiff") filed a complaint against Defendant

Clouse Trucking, Inc. ("Defendant" or "Clouse") alleging race-based employment

discrimination in violation of federal law.[1]  Plaintiff contends Defendant violated

Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 by permitting a

hostile work environment and by terminating his employment in September 2015.[2]

Defendant has moved for summary judgment on all claims.[3]  For the reasons that

follow, Defendant's motion will be denied.

---

[1]   Compl. (ECF No. 1).

[2]   *Id.*

[3]   ECF No. 15.

## I.    BACKGROUND[4]

Plaintiff is an African-American male who began working for Clouse in January 2012.[5]  Clouse is a Pennsylvania-based trucking company that primarily hauls milk in trucks and tankers that it owns.[6]

At the time Plaintiff worked for Clouse, fifteen mechanics were employed to conduct routine maintenance, body work, and repairs on the company vehicles.[7] The in-house mechanics performed ninety-nine percent of the work on the Clouse vehicles.[8]  Plaintiff was the only African-American mechanic at Clouse, although Clouse did employ several African-American drivers during the course of Plaintiff's tenure.[9]

Shortly before Plaintiff's employment with Clouse ended, he was involved in a motor-vehicle accident while driving a company truck in North Carolina.[10] Neither party has provided the date of the accident.  During this incident, the

---

[4]   The relevant facts are taken from Defendant's Statement of Material Facts, (ECF No. 17), Plaintiff's Response to Defendant's Statement of Material Facts, (ECF No. 19), and both parties' evidentiary exhibits, (ECF Nos. 16-1 through 16-9; ECF Nos. 19-2 through 19-6).  If only one party's statement of material facts or response thereto is cited, it is because the relevant facts have been admitted by the opposing party.  Any facts that remain in dispute are noted as such.

[5]   Defendant's Statement of Material Facts ("Def.'s SMF") ¶¶ 1, 4-5.

[6]   *Id.* ¶¶ 2, 16.

[7]   *Id.* ¶ 18.

[8]   *Id.*

[9]   *Id.* ¶ 19.

[10]   Def.'s SMF ¶ 66; Pl.'s Resp. to Def.'s SMF ("Pl.'s Resp.") ¶ 66.

company truck Plaintiff was driving lost pressure in its air-brake system, causing the vehicle to lose its ability to stop.[11] Due to this brake-system failure, Plaintiff hit another vehicle and caused severe damage to the company truck before he could completely stop the truck.[12]

Plaintiff called Dean Feaser ("Feaser"), his direct supervisor at Clouse, to report the accident.[13] Plaintiff also called and informed J. Edward Clouse ("Ed Clouse"), the founder and co-owner of the company, of the accident.[14] Plaintiff stayed in a hotel that night, which was paid for by Clouse.[15]

The following day, Plaintiff was told that a bus would be waiting for him, but no ticket had been purchased so he had to return to his hotel.[16] Upon returning to the hotel, Plaintiff called Feaser several times.[17] According to Plaintiff, Feaser assured him that he was coming to pick him up and was only two hours away.[18] After waiting four more hours, Plaintiff again called Feaser, who told Plaintiff he was "right around the corner."[19] Plaintiff waited a little longer and then phoned

---

[11] Def.'s SMF ¶¶ 67-68.

[12] *Id.* ¶¶ 69-70.

[13] *Id.* ¶ 72.

[14] *Id.*; Pl.'s Resp. ¶ 85; J. Edward Clouse Dep. (ECF No. 19-2), at 7:2-3, 14-16.

[15] Def.'s SMF ¶ 74.

[16] *Id.* ¶ 75.

[17] *Id.* ¶ 76.

[18] *Id.*

[19] *Id.* ¶ 77.

Feaser again, and during that conversation called Feaser a liar due to Feaser's representations regarding when he would arrive.[20] Plaintiff spent the entire day at the hotel. Feaser ultimately arrived with a tow truck sometime between 9:00 p.m. and 11:00 p.m. that evening.[21]

When Feaser arrived, Plaintiff avers that Feaser "jabbed" him in the chest with a finger and told him he did not appreciate being called a liar, and an argument ensued.[22] Feaser testified that Plaintiff "chest-bumped" him during this argument, an accusation Plaintiff explicitly denies.[23] Plaintiff did not arrive home from the accident, which occurred on a Friday, until Sunday morning.[24]

In mid-September 2015, Plaintiff's employment with Clouse ended.[25] Exactly how Plaintiff's employment ended, and who actually ended it, are disputed issues.[26]

---

[20]  *Id.* ¶ 78.  Plaintiff averred in his deposition that after Feaser had told him several times that he was "almost there," the exact words he used on the phone with Feaser were, "[I]nstead of lying to me, just be truthful.  Don't tell me what you want me to hear, just tell me it's going to [be] a little --- it'll be a good while."  Newman Dep. (ECF. No. 16-1), at 101:5-24.

[21]  Def.'s SMF ¶ 79.

[22]  *Id.* ¶ 80; Newman Dep. (ECF No. 16-1), at 102:9-10.

[23]  Def.'s SMF ¶ 81; Pl.'s Resp. ¶ 81; Newman Dep. (ECF No. 16-1), at 102:4-6.

[24]  Def.'s SMF ¶ 84.

[25]  *Id.* ¶¶ 6, 85; ECF No. 9 at 3 (parties' Joint Case Management Plan); Compl. (ECF No. 1) ¶ 17; Answer (ECF No. 5) ¶ 17.

[26]  *Compare* Def.'s SMF ¶¶ 85-86 *with* Pl.'s Resp. ¶¶ 6, 85, 89, 90, 91.

Defendant contends that Feaser terminated Plaintiff due to the argument and the alleged physical altercation in North Carolina.[27] In addition to disputing the "chest-bump" allegations, Plaintiff maintains that Feaser did not have the authority to terminate Plaintiff's employment.[28] Plaintiff points to the deposition of Ed Clouse, who testified that he did not know who told Plaintiff he was terminated, and that it was his understanding that Plaintiff had abandoned his job rather than having been terminated.[29] Be that as it may, the parties themselves agree that (1) Plaintiff's employment ended in mid-September 2015, and (2) Plaintiff's separation from Clouse was involuntary.

On September 30, 2016, Plaintiff filed the instant lawsuit after properly exhausting his administrative remedies with the Equal Employment Opportunity Commission.[30] He alleges that he endured racially discriminatory comments and jokes on a regular basis; he alleges that he was routinely subjected to racial discrimination and harassment at work; he alleges that he was given less favorable assignments than other non-African-American mechanics; and he alleges that he

---

[27] Def.'s SMF ¶¶ 6, 85, 86, 88, 89, 91. Plaintiff denies these assertions. Pl.'s Resp. ¶¶ 6, 85, 86, 88, 89, 91.

[28] Pl.'s Resp. ¶¶ 6, 85, 89, 90, 91.

[29] J. Edward Clouse Dep. (ECF No. 19-2), at 74:11-75:2.

[30] Compl. (ECF No. 1) ¶¶ 6-8; Answer (ECF No. 5) ¶¶ 6-8.

was threatened with termination upon reporting the discrimination and harassment to his superiors.[31]  Defendant denies these allegations.[32]

Plaintiff's three-count complaint contains four employment discrimination claims: hostile work environment harassment on the basis of race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (Count I); wrongful termination employment discrimination based on race, in violation of Title VII (Count II); and violations of 42 U.S.C. § 1981 for race-based hostile work environment harassment and wrongful termination employment discrimination (Count III).[33]  Defendant has moved for summary judgment on all claims.[34]  The motion for summary judgment has been fully briefed, and is ripe for disposition.

## II.    LAW

Federal Rule of Civil Procedure 56 permits a court to enter summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[35]  Material facts are those "that could affect the outcome" of the proceeding, and "a dispute

---

[31]    Compl. (ECF No. 1) ¶¶ 10-16.

[32]    Answer (ECF No. 5) ¶¶ 10-16.

[33]    Compl. (ECF No. 1) ¶¶ 21-32.

[34]    ECF No. 15.

[35]    Fed. R. Civ. P. 56(a).

about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party."[36]

The summary judgment movant has the initial burden of stating the basis for the motion and identifying those portions of the record—depositions, documents, affidavits, admissions, interrogatory answers, or other materials—that it believes demonstrate an absence of a genuine dispute of material fact.[37] "Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof."[38] In assessing whether the moving party has satisfied its burden, the Court does "not engage in credibility determinations, and [] view[s] the facts and draw[s] all reasonable inferences in the light most favorable to the nonmovant."[39]

Once the moving party shows an absence of evidence to support the nonmoving party's claims, then the nonmoving party must rebut the motion with

---

[36] *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[37] *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145 (3d Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c)(1)(A).

[38] *Conoshenti*, 364 F.3d at 140 (quoting *Singletary v. Pa. Dep't. of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001)).

[39] *Pearson v. Prison Health Serv.*, 850 F.3d 526, 533 (3d Cir. 2017) (citations omitted).

facts in the record and cannot rest solely on assertions in the pleadings.[40]  The

nonmoving party must present affirmative evidence that is adequate as a matter of

law to sustain a judgment in its favor; the evidence must not be colorable,

conclusory, or speculative.[41]  If the nonmoving party "fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and

on which that party will bear the burden at trial," summary judgment is

appropriate.[42]  Finally, for evidence to be properly considered at summary

judgment, the proponent must be able to demonstrate that such evidence can be

produced in a form that would be admissible at trial.[43]

## III.   ANALYSIS

As stated above, Plaintiff raises four race-based employment discrimination

claims: Title VII hostile work environment harassment, Title VII wrongful

termination employment discrimination, and similar violations under Section 1981.

Because race-based employment discrimination claims under 42 U.S.C. § 1981 are

generally subject to the same analysis as discrimination claims based on Title

---

[40]  *Berckeley Inv. Grp. Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

[41]  *Davis v. Pa. Tpk. Comm'n*, 204 F. Supp. 3d 793, 800 (M.D. Pa. 2016) (Kane, J.) (citing *Anderson*, 477 U.S. at 249-50).

[42]  *Celotex*, 477 U.S. at 322.

[43]  *See Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 & n.13 (3d Cir. 1999); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1246 (3d Cir. 1993); *see also* Fed. R. Civ. P. 56(c)(2).

VII,[44] the Court need only analyze Plaintiff's first two claims. If summary judgment is proper, or improper, on the merits of the Title VII discrimination claims, the same result would necessarily follow for the parallel Section 1981 discrimination claims.

### A. Hostile Work Environment Harassment

To establish a hostile work environment race-based harassment claim, the employee must show that "(1) [he] suffered intentional discrimination based on his[] [race], (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of *respondeat superior* liability [meaning the employer is responsible]."[45] The United States Court of Appeals for the Third Circuit has recently emphasized that the second element is disjunctive; in other words, the discrimination need only be severe *or* pervasive, it does not have to be both.[46]

---

[44]   *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (citation omitted). This identical analysis includes applying the burden-shifting framework found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), when appropriate. *Id.* Section 1981 claims differ in important ways from Title VII claims, such as the time limitations for filing suit, whether administrative exhaustion is required, the type of discrimination protected against, and the type of worker who can maintain a claim. *See, e.g.*, *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017). However, none of substantive distinctions between Title VII and Section 1981 claims appear to be at issue in the instant case.

[45]   *Castleberry*, 863 F.3d at 263 (third and fourth alterations in original) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013)).

[46]   *Id.* at 264.

Here, Defendant asserts that Plaintiff cannot satisfy the second and fifth elements required to establish a race-based hostile work environment discrimination claim.[47]  That is, Defendant contends Plaintiff cannot show that the alleged racial harassment was severe or pervasive, nor can Plaintiff demonstrate the requisite *respondeat superior* liability.  I will address each challenged element in turn.

### 1.    Element Two: Severe or Pervasive Discrimination

When determining whether discrimination is severe or pervasive, the Third Circuit requires a "totality of the circumstances" analysis.[48]  Factors to be considered include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[49] The individual discriminatory incidents are not to be parsed out; rather, they are to be considered "as a whole . . . to determine whether the acts that collectively form the continuing violation are severe or pervasive."[50]

Defendant argues that the discriminatory remarks and actions attributed to other Clouse employees were merely "isolated incidents" and "random office

---

[47]   ECF No. 16 at 22.

[48]   *Mandel*, 706 F.3d at 168.

[49]   *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

[50]   *Id.*

banter" that were "not made in a serious context."[51]  Defendant further claims that requiring Plaintiff to drive trucks instead of perform mechanic duties was for "legitimate, business purposes – it was not harassment."[52]

Plaintiff counters this argument with substantial record evidence tending to show that the racial harassment at Clouse was both severe *and* pervasive. According to Plaintiff, the following incidents occurred during Plaintiff's tenure: (1) at the outset of Plaintiff's employment, Fred Rosenberry—a shop foreman— told Plaintiff that he was not wanted in the shop because someone may be having a bad day and out of frustration use the word "nigger"[53]; (2) Harry Arnold, a driver for Clouse, and Dwight Keebaugh ("Keebaugh"), a mechanic and driver for Clouse, both called Plaintiff "nigger" while working with Plaintiff in the shop[54]; (3) Keebaugh and Robert Showaker ("Showaker"), a mechanic who also schedules and assigns work, both heard the term "nigger-rig" used by mechanics at Clouse, which they interpreted as doing something "half-assed" or "half," and Showaker heard the word "nigger" used in the shop by multiple individuals[55]; (4) Keebaugh introduced Plaintiff to a visiting vendor as the "token black man" who cannot be

---

[51]  ECF No. 16 at 22, 25.

[52]  *Id.* at 25.

[53]  ECF No. 18 at 10 (citing Pl.'s Resp. ¶ 38); Newman Dep. (ECF No. 19-3), at 65:9-17.

[54]  ECF No. 18 at 10-11 & nn.3, 4 (citing Pl.'s Resp. ¶¶ 39, 105, 106); ECF No. 19-6 (Pl.'s Answers to Def.'s First Set of Interrogs.) at 4.

[55]  ECF No. 18 at 11 & n.5 (citing Pl.'s Resp. ¶¶ 38, 40, 104); Showaker Dep. (ECF No. 19-5), at 44:8-45:4, 47:23-48:7; Keebaugh Dep. (ECF No. 19-4), at 30:7-31:9.

fired because he might respond with a charge of racial discrimination against Clouse[56]; (5) Showaker made statements to Plaintiff such as "black man's stupid," "black man's dumb," and "I never met a smart black man"[57]; (6) Phil Tanger ("Tanger"), a second shift supervisor, made statements to Plaintiff such as "dumb boy" and "dumb black man," and was overheard by Showaker on multiple occasions making racially charged jokes invoking African-American stereotypes such as "eating watermelons" and "chicken"[58]; (7) Showaker heard employees in the shop talking about the Ku Klux Klan and white supremacy; Plaintiff heard one of those employees—Josh Brown—talk about attending Klan meetings, discuss white power, and refer to African Americans as "monkeys"[59]; (8) Jeremy Finkenbinder, another shop worker, said he was going to get a pet bat and name him "Black Man," and the following day he put a dead bat on top of Plaintiff's tool box; when Plaintiff reported this incident, Ed Clouse responded by laughing and saying that "maybe Jeremy thought [Plaintiff] was a hungry black man"[60]; and (9) another coworker identified only as "Cody" made derogatory comments to

---

[56]    ECF No. 18 at 11 (citing Pl.'s Resp. ¶ 39); ECF No. 19-6 (Pl.'s Answers to Def.'s First Set of Interrogs.) at 3.

[57]    ECF No. 18 at 11 (citing Pl.'s Resp. ¶ 41); Newman Dep. (ECF No. 19-3), at 68:18-69:3.

[58]    ECF No. 18 at 11-12 & n.6 (citing Pl.'s Resp. ¶¶ 41, 53, 107); Newman Dep. (ECF No. 19-3), at 75:1-19; Showaker Dep. (ECF No. 19-5), at 46:10-47:2.

[59]    ECF No. 18 at 12 & n.7 (citing Pl.'s Resp. ¶¶ 59, 108); Showaker Dep. (ECF No. 19-5), at 52:3-10; Newman Dep. (ECF No. 19-3), at 132:2-7.

[60]    ECF No. 18 at 12 (citing Pl.'s Resp. ¶ 61); ECF No. 19-6 (Pl.'s Answers to Def.'s First Set of Interrogs.) at 4.

Plaintiff about African-American women, stating that they were "nasty and disgusting," and that Cody would vomit if he touched one.[61]

Plaintiff also avers that when he repeatedly raised concerns to his superiors about the ongoing racial discrimination and harassment, he was told "not to start any trouble" and that it was probably "Plaintiff's own fault that coworkers were harassing him."[62] Plaintiff testified that after reporting Tanger's offensive comments, he was told that if he did not stop "troublemaking" he would be put on the road more.[63] Plaintiff further attested that this is exactly what happened: after reporting the racial harassment, he was given more driving assignments—which were less financially lucrative than mechanic duties—causing substantial income loss when compared to his pre-complaint earnings.[64] Moreover, Plaintiff testified that even when he was working in the shop, he was "consistently assigned tasks that were below his qualification level," while other non-African-American mechanics with less training and qualifications were assigned more significant tasks.[65]

---

[61] ECF No. 18 at 12 (citing Pl.'s Resp. ¶ 58); ECF No. 19-6 (Pl.'s Answers to Def.'s First Set of Interrogs.) at 6.

[62] Pl.'s Resp. ¶ 97; Newman Dep. (ECF No. 19-3), at 69:18-70:3; ECF No. 19-6 (Pl.'s Answers to Def.'s First Set of Interrogs.) at 4, 7.

[63] Pl.'s Resp. ¶ 99; Newman Dep. (ECF No. 19-3), at 77:16-78:12.

[64] Pl.'s Resp. ¶ 101; ECF No. 19-6 (Pl.'s Answers to Def.'s First Set of Interrogs.) at 8.

[65] Pl.'s Resp. ¶¶ 26, 27, 32; Newman Dep. (ECF No. 19-3), at 138:17-139:18.

When considering the totality of the record evidence of racial harassment and discrimination proffered by Plaintiff, it is clear that Plaintiff has met his burden at summary judgment. In light of the extensive and troubling evidence set forth above, I find no need to discuss in detail each factor recited in *Mandel*. Rather, I simply note that Plaintiff's evidence demonstrates that each factor the Third Circuit has provided weighs in Plaintiff's favor, and thus conclude that Plaintiff has sufficiently demonstrated severe or pervasive racial discrimination during his employment. Accordingly, element two provides no basis for granting summary judgment in Defendant's favor on the hostile work environment claims.

## 2. Element Five: *Respondeat Superior* Liability

The fifth and final element of a hostile work environment discrimination claim involves whether there is a basis to hold the employer liable.[66] "When the hostile work environment is created by a victim's non-supervisory co-workers, the employer is not automatically liable."[67] But employer liability for non-supervisory coworker harassment may exist "if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action."[68] In other words, an employer may be liable for the harassment inflicted by non-

---

[66] *Mandel*, 706 F.3d at 167 (citation omitted).

[67] *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009).

[68] *Id.*

supervisory coworkers "if the employer was negligent in . . . responding to a report of such harassment."[69]

In moving for summary judgment, Defendant argues that there is no basis for employer liability.[70]  Defendant contends that "rather than being discriminated against by [Defendant], the record shows that Plaintiff was treated generously by Mr. Clouse, who advanced money to Plaintiff on numerous occasions and let him sleep in his house on several occasions."[71]  Defendant also asserts that "Plaintiff's race claim is a solitary claim in [Defendant's] history."[72]  Both of these arguments miss the mark.

The question is not whether Ed Clouse personally treated Plaintiff well, or whether there were other discrimination claims lodged against Defendant.  Rather, the question is whether Defendant took "prompt and appropriate remedial action" after discovering, or after it should have discovered, that racial harassment and discrimination were taking place at Clouse.[73]

Plaintiff points out that Defendant had actual knowledge of the harassment, as he had made multiple reports and complaints to both Ed Clouse and Dean

---

[69]  *Id.* at 105.

[70]  ECF No. 16 at 22, 26.

[71]  *Id.* at 25 (citing Def.'s SMF ¶¶ 36-37).

[72]  *Id.* at 26 (citing Def.'s SMF ¶¶ 93-96).

[73]  *Huston*, 568 F.3d at 104-05.

Feaser.[74]  Plaintiff contends that the extent of the "remedial measures" Defendant

provided was being told "not to start any trouble" and that the harassment was

"probably Plaintiff's own fault."[75]  As just one example, when Plaintiff made the

specific complaint about the bat incident, "Ed Clouse's response was to laugh and

say that 'maybe Jeremy thought [Plaintiff] was a hungry black man.'"[76]

Defendant has failed to put forth any evidence showing that Defendant took

prompt and appropriate remedial action—or *any* remedial action, for that matter—

after Plaintiff repeatedly reported racial harassment by his coworkers.  Plaintiff, on

the other hand, has proffered evidence that Defendant took no appropriate remedial

action.  Therefore, element five, like element two, provides no basis for granting

summary judgment for Defendant.  Accordingly, I will deny summary judgment on

the hostile work environment claims under Title VII and Section 1981.

### B.    Wrongful Termination Employment Discrimination

Plaintiff's remaining Title VII and Section 1981 claims allege wrongful

termination on the basis of race.  To establish a *prima facie* case of employment

discrimination, the plaintiff must show that (1) he "is a member of a protected

class"; (2) he "was qualified for the position" he sought to attain or retain; (3) he

"suffered an adverse employment action"; and (4) "the action occurred under

---

[74]   ECF No. 18 at 16-17 (citing Pl.'s Resp. ¶¶ 61, 97, 100).

[75]   *Id.* at 16 (citing Pl.'s Resp. ¶ 97).

[76]   *Id.* at 16-17 (citing Pl.'s Resp. ¶ 61) (alteration in original).

circumstances that could give rise to an inference of intentional discrimination."[77] The Third Circuit has noted that "there is a low bar for establishing a *prima facie* case of employment discrimination."[78]

If a plaintiff establishes such a *prima facie* case relying on circumstantial evidence of discrimination, "an inference of discriminatory motive arises and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action."[79] If the defendant employer articulates a legitimate, non-discriminatory reason for the action, "the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely pretext for intentional discrimination."[80]

### 1.    *Prima Facie* Case of Employment Discrimination

Defendant first contends that Plaintiff has failed to establish a *prima facie* case of employment discrimination.[81] While conceding that Plaintiff can establish the first three elements of such a claim, Defendant maintains that "Plaintiff cannot

---

[77]  *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (citing *McDonnell Douglas*, 411 U.S. at 802).

[78]  *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006) (citing *Ezold v. Wolf*, 983 F.2d 509, 523 (3d Cir. 1993)).

[79]  *Makky*, 541 F.3d at 214 (citation omitted).

[80]  *Id.* (citation omitted).

[81]  ECF No. 16 at 15.

show that the adverse action occurred under circumstances that raise an inference of discriminatory action."[82]

In response, Plaintiff again points to substantial record evidence tending to show that his termination occurred under circumstances that raise an inference of racial animus. In addition to the evidence of racial harassment outlined above in Section III. A. 1., Plaintiff had made repeated complaints to Ed Clouse regarding this discriminatory conduct, and was warned by Ed Clouse "not to start any trouble."[83] Ed Clouse also warned Plaintiff not to file any complaints with outside agencies without going to him first, on pain of being fired.[84] According to Plaintiff's deposition testimony, Feaser had also told Plaintiff that he "had a problem with employees pulling the race card" after Plaintiff had complained about Tanger's racially offensive comments.[85] Additionally, Showaker testified that he had heard both Dean Feaser and Don Feaser complain and express that they were upset about Plaintiff "pulling the race card by complaining about racial comments."[86] Finally, after reporting Tanger's racially offensive comments,

[82]  *Id.*

[83]  ECF No. 18 at 19; Pl.'s Resp. ¶ 97 (citing Newman Dep. (ECF No. 19-3), at 69:18-21).

[84]  ECF No. 18 at 19; Pl.'s Resp. ¶ 97 (citing Newman Dep. (ECF No. 19-3), at 69:24-70:3).

[85]  ECF No. 18 at 19 (citing Pl.'s Resp. ¶ 57); Newman Dep. (ECF No. 19-3), at 186:10-187:7.

[86]  ECF No. 18 at 19 (citing Pl.'s Resp. ¶ 57); Showaker Dep. (ECF No. 19-5), at 50:24-51:18.

Plaintiff was told that if he did not stop "troublemaking," he would be given more driving assignments.[87]

Plaintiff has provided sufficient evidence of racial harassment and discrimination, as well as evidence of being warned not to make "trouble" by reporting the discriminatory conduct of his coworkers.  He has also proffered evidence that after raising repeated complaints of discrimination with his superiors, his employment was terminated.  These circumstances "could give rise to an inference of intentional discrimination."[88]  As such, Plaintiff has sufficiently established the fourth element—the only element contested by Defendant—of a *prima facie* case of employment discrimination.

### 2. *McDonnell Douglas* Burden-Shifting Framework Challenge

Defendant next argues that even if Plaintiff can meet his initial burden of demonstrating a *prima facie* case of employment discrimination, summary judgment for Defendant is proper because Plaintiff fails at step three of the *McDonnell Douglas* burden-shifting.[89]  That is, Defendant argues it has articulated a legitimate, non-discriminatory reason for Plaintiff's termination and Plaintiff has failed to rebut that reason as pretextual.[90]  I respectfully disagree.

---

[87]  ECF No. 18 at 19 (citing Pl.'s Resp. ¶ 99); Newman Dep. (ECF No. 19-3), at 77:16-78:2.

[88]  *Makky*, 541 F.3d at 214.

[89]  ECF No. 16 at 16-22.

[90]  *Id.*

At summary judgment, the third step of the *McDonnell Douglas* burden-shifting framework requires the plaintiff "to provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination."[91]  A plaintiff can demonstrate pretext by proffering evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reason[]; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[92]

Defendant contends that Plaintiff was terminated for "chest-bumping" Feaser after the accident in North Carolina.[93]  First, and rather significantly, Plaintiff expressly denies that he ever physically touched Feaser.[94]

While several other Clouse employees testified that their understanding was that Plaintiff had been fired for "chest-bumping" Feaser,[95] the only record evidence from those present in North Carolina is the directly conflicting deposition

---

[91]  *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013) (citing *Fuentes v. Perskie*, 32 F.3d 759, 764-65 (3d Cir. 1994) and *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 364 (3d Cir. 2008)).

[92]  *Id.* at 427 (quoting *Fuentes*, 32 F.3d at 764).

[93]  ECF No. 16 at 16.

[94]  Pl.'s Resp. ¶¶ 81, 86, 88, 89, 90; Newman Dep. (ECF No. 19-3), at 102:4-10.

[95]  *See* Keebaugh Dep. (ECF No. 16-4), at 38:5-39:19; Ickes Dep. (ECF No. 16-5), at 37:16-39:6; Showaker Dep. (ECF No. 16-7), at 56:4-12.

testimony of Feaser and Plaintiff.[96]  Notably, two of the three other Clouse

employees (relied on by Defendant) testified that their knowledge about both the

incident and the reason for Plaintiff's termination was—in their own words—

"hearsay."[97] The third employee testified that Feaser had "told" him that Feaser

and Plaintiff "got into it down there and that [Plaintiff] chest bumped him"[98]—also

hearsay.[99]

Defendant has provided no basis for admitting this hearsay evidence at

trial.[100]  Consequently, as the summary judgment record currently stands, Feaser

has testified that Plaintiff "chest-bumped" him in North Carolina; Plaintiff has

testified to the contrary.  Such directly conflicting evidence casts sufficient doubt

on Defendant's non-discriminatory reason to allow a reasonable factfinder "to

discredit the employer's proffered justification" or find it "unworthy of

---

[96] *Compare* Feaser Dep. (ECF No. 16-3), at 53:3-17 *with* Newman Dep. (ECF No. 19-3), at 102:4-10.

[97] Keebaugh Dep. (ECF No. 16-4), at 38:5-22; Ickes Dep. (ECF No. 16-5), at 37:22-38:1.

[98] Showaker Dep. (ECF No. 16-7), at 56:4-9.

[99] Fed. R. Evid. 801(c).

[100] *See Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 & n.13 (3d Cir. 1999); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1246 (3d Cir. 1993); *see also* Fed. R. Civ. P. 56(c)(2).

credence."[101]  Indeed, such a credibility issue is the quintessential genuine dispute of material fact that requires resolution by a jury, not the Court.

Second, Plaintiff points to further evidence that he believes would permit a factfinder to discredit Defendant's proffered justification or to find that invidious discrimination was at least a motivating factor in Plaintiff's termination.  Plaintiff asserts that there is record evidence showing that Feaser did not have the requisite authority to terminate him, thus undercutting Feaser's contention that he fired Plaintiff for chest-bumping him.[102]  Plaintiff also notes that Ed Clouse testified that he did not even know that Plaintiff was terminated but instead believed that Plaintiff had voluntarily abandoned his job,[103] which tends to discredit Feaser's testimony that he had terminated Plaintiff with Ed Clouse's approval.[104]  Finally, Plaintiff points to the "playing the race card" responses to his reports of racial

---

[101]  *Burton*, 707 F.3d at 427 (quoting *Fuentes*, 32 F.3d at 765).  The Third Circuit has explained that a plaintiff's evidence does not even have to go so far as directly contradicting the employer's proffered explanation; rather, the evidence must simply "allow a factfinder reasonably to infer" that the employer's proffered non-discriminatory reason was "either a *post hoc* fabrication or otherwise did not actually motivate the employment action[.]" *Fuentes*, 32 F.3d at 764.

[102]  ECF No. 18 at 21, 23 (citing Pl.'s Resp. ¶ 85); J. Edward Clouse Dep. (ECF No. 19-2), at 74:11-75:2.

[103]  ECF No. 18 at 21 (citing Pl's Resp. ¶ 85); J. Edward Clouse Dep. (ECF No. 19-2), at 74:11-75:2.

[104]  Feaser Dep. (ECF No. 16-3), at 29:20-30:15.

discrimination and harassment, and how several superiors at Clouse expressed displeasure with Plaintiff complaining about these issues.[105]

I find that Plaintiff has put forth sufficient evidence demonstrating "weaknesses" and "inconsistencies" in Defendant's proffered non-discriminatory reason such that a reasonable factfinder could rationally find it "unworthy of credence."[106] Despite Defendant's assertion that "there is substantial undisputed evidence of record that supports Clouse's proffered reason for [P]laintiff's termination,"[107] the only admissible evidence Defendant has provided[108] is directly disputed by Plaintiff's countervailing evidence. Accordingly, Plaintiff has met his burden at the third stage of the *McDonnell Douglas* burden-shifting framework.[109] I will therefore deny Defendant's motion for summary judgment on Plaintiff's

---

[105] ECF No. 18 at 21; *see supra* notes 85-86 and accompanying text.

[106] *Burton*, 707 F.3d at 427 (quoting *Fuentes*, 32 F.3d at 765).

[107] ECF No. 16 at 19.

[108] This evidence includes the deposition of Dean Feaser, as well as the cited portion of the Clouse "Driver Handbook" that prohibits, among other things, "fighting, . . . provoking a fight on company property, . . . acts of violence, threats, or abuse when representing Clouse Trucking." ECF No. 16-8 (Def.'s Ex. H) at 22. To the extent Defendant generally relies on Plaintiff's unemployment compensation proceedings to support its non-discriminatory reason for Plaintiff's termination, *see* ECF No. 16 at 19 (citing Def.'s SMF ¶ 92), the findings and outcome of that proceeding have no bearing on the instant federal lawsuit. *See* 43 PA. STAT. AND CONS. STAT. § 829 ("No finding of fact or law, judgment, conclusion or final order made with respect to a claim for unemployment compensation under this act may be deemed to be conclusive or binding in any separate or subsequent action or proceeding in another forum.").

[109] *See Burton*, 707 F.3d at 427.

wrongful discharge employment discrimination claims under Title VII and Section 1981.

## IV. CONCLUSION

Plaintiff has successfully rebutted—with record evidence—every summary judgment challenge Defendant has raised. Accordingly, Defendant's motion for summary judgment on Plaintiff's employment discrimination claims under Title VII and Section 1981 is denied in its entirety.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge